UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| TODD STAPLES, | * * * | |
| Plaintiff, | * * | |
| v. | * * | |
| VERIZON DATA SERVICES, LLC, | * * | Civil Action No. 18-cv-40208-ADB |
| VERIZON NEW ENGLAND, INC., | * | |
| VERIZON COMMUNICATIONS, INC., and | * | |
| CHETAN GOPAL, | * * | |
| Defendants. | * * | |

**MEMORANDUM AND ORDER ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

BURROUGHS, D.J.

In this employment discrimination case, Plaintiff Todd Staples alleges that Defendants
Verizon Data Services, LLC ("VDS"), Verizon New England, Inc. ("VNEI"), Verizon
Communications, Inc. ("VCI," and together with VDS and VNEI, the "Verizon Defendants"),
and Chetan Gopal (together with the Verizon Defendants, "Defendants") violated multiple
federal and state employment laws in connection with a workplace injury that he sustained and
his subsequent termination.  [ECF No. 1 ("Compl.")].  Currently before the Court is Defendants'
motion for summary judgment on all nine counts of the complaint.  [ECF No. 38].  For the
reasons set forth below, Defendants' motion is GRANTED in part and DENIED in part.

## I.    BACKGROUND

### A.    Factual Background

Except as otherwise noted, the following facts are undisputed.[1]

VDS is a global telecommunications company.  [ECF No. 45 ¶ 1].  VNEI and VDS are subsidiaries of VCI.  [Id. ¶ 3].  In 2013, Staples began working for VDS as a Quality Assurance Manager in the Information Technology ("IT") and Networking Organization.  [Id. ¶ 4].  He has never worked for VNEI or VCI.  [Id. ¶¶ 5–6].  About three years after he was hired, Staples was promoted to Quality Assurance principal engineer.  [Id. ¶ 7].  At all relevant times, Amin Javanbakht was Staples' direct supervisor and Gopal was Staples' second-level manager.  [Id. ¶¶ 10–11].  While employed by VDS, Staples was a productive, well-liked, and decorated employee.  [Id. at 19].  In 2014, 2015, and 2016, he won employee "Spotlight Awards," which are awarded to exceptional employees, and his performance reviews were generally positive throughout his tenure.  [Id. at 19–20].

On or around June 21, 2017, Staples seriously injured his thumb at work.  [ECF No. 45 ¶ 12].  VDS granted his request for medical leave, and Staples was out of work from approximately June 21, 2017 through August 28, 2017.  [Id. ¶ 13].  During his medical absence, Staples' colleagues contacted him intermittently with work-related questions, but Staples cannot recall how often this occurred.  [Id. ¶ 14].  Although he remembers performing at least some work on leave, he does not remember exactly what he did and considers all the work he performed while on leave to have been "voluntary."  [Id. ¶¶ 14, 16].  When he returned to work

---

[1] The Court draws the facts from Defendants' Local Rule 56.1 statement, [ECF No. 40], Staples' response to that statement, [ECF No. 45], and the documents referenced therein.

following his medical leave, he returned to the same job, with the same responsibilities and pay. [Id. ¶ 18].

On or around September 16, 2017, Staples injured his back.  [ECF No. 45 ¶ 19].  A few days later, Staples asked to take another medical leave, and VDS granted his request.  [Id. ¶ 20]. On or around September 25, 2017, Staples sought permission to work from home, and VDS approved.  [Id. ¶ 21].  He does not recall being contacted by co-workers regarding work matters between September 19 and 25, 2017, [id. ¶ 22], and the record is unclear regarding whether and how often he was contacted after he began working from home.  With respect to both of Staples' injuries (thumb and back), VDS "approved all of [Staples'] requests for accommodation, leave, short and long-term disability benefits, and workers' compensation benefits."  [Id. ¶ 23].

In or around November 2017, to cut costs, VDS implemented a large-scale reduction in force ("RIF") within its IT and Networking units.  [ECF No. 45 ¶ 24].  Gopal says that he was instructed by his supervisor to eliminate one of his team-members and to select the individual whose departure would impact the business the least.  [ECF No. 40 ¶ 25].[2]  Gopal further avers that the pool of employees he was to consider for the RIF included Javanbakht but excluded individuals who had been recently hired but had not yet officially joined the team.  [Id. ¶ 26].[3]  In late 2017, Staples was working exclusively on back-end infrastructure for VDS's network.  [ECF No. 45 ¶ 28].[4]  According to Gopal, back-end work does not directly generate revenue.  [ECF

---

[2] Staples argues that a reasonable jury could reject Gopal's testimony and that what Gopal's supervisor told him is inadmissible hearsay.  [ECF No. 45 ¶ 25].

[3] Staples counters that Gopal's deposition testimony on this issue was unclear and inconclusive, that a reasonable jury could reject his testimony, and that the instructions provided to Gopal are hearsay.  [ECF No. 45 ¶ 26].

[4] Although Staples concedes that this was the case, he notes that he was capable of working on client-facing projects and would have been doing so but for his injuries.  [ECF No. 45 ¶ 30].

No. 40 ¶ 27].[5]  During this time frame, Charles Clark and David Tassie were the two other principal engineers working under Gopal.  [ECF No. 45 ¶ 29].  Gopal testified that all the employees from his team that were eligible for the RIF, other than Staples, were working on client-facing projects.  [ECF No. 40 ¶ 31].[6]  Believing that laying off Staples would result in the least business impact (because he was not then working on client-facing projects), Gopal chose Staples for the RIF.  [Id. ¶ 32].[7]

After selecting Staples for the RIF, Gopal worked with Kimberly Birk, a member of VDS's Human Resources ("HR") department, to compare Staples' skillset against those of Clark and Tassie, in an exercise called a "rate and rank" ("R&R").  [ECF No. 40 ¶ 33].[8]  According to Defendants, the R&R confirmed that terminating Staples would impact the business the least.  [Id.].[9]  On November 7, 2017, after he had already chosen Staples for the layoff, Gopal sent Staples a "Quick Note" ("QN"), [ECF No. 45 ¶ 36], which read:

---

[5] Staples disputes this fact, arguing that Gopal's self-serving testimony need not be credited at this stage because it is unsupported by documents and comes from an interested witness.  [ECF No. 45 ¶ 27].

[6] Staples disputes this fact, maintaining that the newly-hired employees should have been considered for the layoff and further that Gopal's testimony regarding the work other employees were doing could be rejected by a reasonable jury.  [ECF No. 45 ¶ 31].

[7] Staples counters that a reasonable jury could reject Gopal's testimony that (1) he believed firing Staples would have the least business impact and/or (2) he fired Staples for that reason.  [ECF No. 45 ¶ 32].

[8] Staples does not seem to dispute that these events took place but does question their propriety and Gopal's motivations.  [ECF No. 45 ¶ 33].

[9] Staples argues that he was not the employee whose termination would least impact the business.  [ECF No. 45 ¶ 33].  Staples also takes issue with how the R&R was conducted.  Specifically, he notes Javanbakht's deposition testimony that, as Staples' direct supervisor, he ordinarily would have been involved in the R&R, that he was uncomfortable that he was not involved in the R&R and RIF selection process, and that he likely would not have selected Staples for layoff.  [Id. ¶ 41; id. at 23].  Clark and Tassie also expressed views, during their

> Given that you are one of the senior members in the team, need you figure [sic] out how to engage over and beyond the work you are doing on just openstack development.  I am expecting you to reach out to other [sic] and see how you can contribute a lot more to the group.

[ECF No. 40-4 at 2].  The parties dispute what QNs are and why Gopal sent one to Staples. Defendants maintain that VDS encouraged its managers, including Gopal, to communicate with employees using QNs, which are non-disciplinary and provide fast and informal feedback.  [ECF No. 40 ¶ 34].  Additionally, Defendants assert that Gopal was specifically encouraged to increase his use of QNs in and around November 2017 during an annual review.  [Id. ¶ 35].  Finally, Defendants assert that even though Gopal had already selected Staples for the RIF, he sent the QN because it was possible that VDS could reverse course regarding the RIF at any time.  [Id. ¶ 38].  Staples responds that Gopal's deposition testimony regarding his use of QNs was inconsistent, that QNs are not commonly used at VDS, that no one from HR instructed Gopal to send a QN to Staples, that QNs automatically become part of an employee's personnel file, and that his termination was a *fait accompli* by the time the QN was sent.  [ECF No. 45 ¶¶ 34–35, 38; ECF No. 46-1 at 49–50].  After receiving the QN, Staples requested a meeting with Gopal the next day to discuss it.  [ECF No. 45 ¶ 42].  Gopal agreed, but the meeting never took place.  [Id. ¶ 43].

On November 16, 2017, Staples was notified that he would be laid off, [ECF No. 45 ¶ 44], and on December 29, 2017, he was terminated, [id. at 32].

---

depositions, that the R&R was potentially inaccurate, that Javanbakht would have been better-equipped than Gopal to evaluate team members' skills, and that they might not have selected Staples for the RIF if they were the ones making the decisions.  See [id. at 21, 26–30].

Prior to being notified of his impending termination, Staples had never complained of disability discrimination, [ECF No. 45 ¶ 49], and he acknowledges that no one at VDS made any negative comments about his injuries, [id. ¶ 45].

### B.    Procedural Background

On December 15, 2018, Staples sued Defendants, alleging violations of various federal and state employment laws.   [Compl.].   He brings the following nine claims: (1) a claim against the Verizon Defendants for interfering with his rights under the Family and Medical Leave Act ("FMLA") (Count I), [id. ¶¶ 70–80]; (2) a claim against the Verizon Defendants for retaliating against him for exercising his rights under the FMLA (Count II), [id. ¶¶ 81–87]; (3) a claim against the Verizon Defendants for failing to provide him with a reasonable accommodation for his disability in violation of the Americans with Disabilities Act ("ADA") (Count III), [id. ¶¶ 88–98]; (4) a claim against the Verizon Defendants for disability discrimination and/or retaliation in violation of the ADA (Count IV),[10] [id. ¶¶ 99–106]; (5) a claim against the Verizon Defendants for disability discrimination in violation of the Massachusetts disability discrimination statute (Count V), [id. ¶¶ 107–20]; (6) a claim against Defendants for disability-related retaliation in violation of the Massachusetts disability discrimination statute (Count VI), [id. ¶¶ 121–25]; (7) a claim against Gopal for violating the Massachusetts disability discrimination statute (Count VII), [id. ¶¶ 126–30]; (8) a claim against Gopal for aiding and abetting the Verizon Defendants' violations of the Massachusetts disability discrimination statute (Count VIII), [id. ¶¶ 131–35]; and (9) a claim against the Verizon Defendants for retaliation in violation of the Massachusetts workers' compensation statute (Count IX), [id. ¶¶ 136–40].

---

[10] Because the complaint inadvertently contains two Count IIIs and no Count IV, see [Compl. ¶¶ 88, 99], the Court will refer to the third claim listed as "Count III" and the fourth claim listed as "Count IV."

On November 24, 2020, Defendants moved for summary judgment on all nine counts. [ECF No. 38].  Staples opposed on January 21, 2021, [ECF No. 47], and Defendants replied on February 5, 2021, [ECF No. 50].

## II.     LEGAL STANDARD

Summary judgment is appropriate where the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'"  Robinson v. Cook, 863 F. Supp. 2d 49, 60 (D. Mass. 2012) (alteration in original) (quoting Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008)).  "A fact is material if its resolution might affect the outcome of the case under the controlling law."  Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003).  Thus, "[a] genuine issue exists as to such a fact if there is evidence from which a reasonable trier could decide the fact either way."  Id.  By invoking summary judgment, "the moving party in effect declares that the evidence is insufficient to support the nonmoving party's case."  United States v. Plat 20, Lot 17, Great Harbor Neck, New Shoreham, R.I., 960 F.2d 200, 204 (1st Cir. 1992) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

"To succeed in showing that there is no genuine dispute of material fact, the moving party must . . . 'affirmatively produce evidence that negates an essential element of the non-moving party's claim,' or, using 'evidentiary materials already on file . . . demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.'" Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4–5 (1st Cir. 2015) (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)).  Conversely, "[t]o defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by

presenting enough competent evidence to enable a finding favorable to the nonmoving

party." ATC Realty, LLC v. Town of Kingston, N.H., 303 F.3d 91, 94 (1st Cir. 2002) (quoting

LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 842 (1st Cir. 1993)).  That is, the nonmoving party

must set forth specific, material evidence showing that there is "a genuine disagreement as to

some material fact." Plat 20, Lot 17, Great Harbor Neck, 960 F.2d at 204 (citing Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986)).

 In reviewing the record, the Court "must take the evidence in the light most flattering to

the party opposing summary judgment, indulging all reasonable inferences in that party's

favor." Cochran, 328 F.3d at 6.  The First Circuit has noted that this review "is favorable to the

nonmoving party, but it does not give him a free pass to trial." Hannon v. Beard, 645 F.3d 45, 48

(1st Cir. 2011).  "The factual conflicts upon which he relies must be both genuine and

material[,]" Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 397 (1st Cir. 2012), and the

Court may discount "conclusory allegations, improbable inferences, and unsupported

speculation." Cochran, 328 F.3d at 6 (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co.,

896 F.2d 5, 8 (1st Cir. 1990)).

 "'Even in employment discrimination cases where elusive concepts such as motive or

intent are at issue,' summary judgment is appropriate if the non-moving party rests 'merely upon

conclusory allegations, improbable inferences, and unsupported speculation.'" Benoit v. Tech.

Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003) (quoting Feliciano de la Cruz v. El Conquistador

Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000)).

8

## III.      DISCUSSION

### A.      Claims Against VNEI and VCI

Staples concedes that neither VNEI nor VCI employed him.  [ECF No. 45 ¶ 5.]

Defendants specifically argue in their summary judgment brief that all claims against VNEI and

VCI should be dismissed on that basis, [ECF No. 39 at 3], but Staples does not address the issue

in his opposition, see [ECF No. 47].  Each of the employment statutes that Staples relies upon

applies only to employers (or, in some instances, individuals acting on behalf of or in concert

with employers).  See 29 U.S.C. § 2615 (FMLA); 42 U.S.C. § 12111 (ADA); Mass. Gen. Laws

ch. 151B, § 4(4), 4(16) (Massachusetts disability discrimination statute); Mass. Gen. Laws ch.

152, § 75B(2) (Massachusetts workers' compensation statute).  Because it is undisputed that

neither VNEI nor VCI was Staples' employer, Staples' claims against VNEI and VCI fail as a

matter of law, and Defendants' motion for summary judgment on all claims asserted against

VNEI and VCI, [ECF No. 38], is therefore GRANTED.

### B.      Claims Against VDS

#### 1.      FMLA Interference (Count I)

"[T]he FMLA makes it 'unlawful for any employer to interfere with, restrain, or deny the

exercise of or the attempt to exercise' [an individual's FMLA] rights."  Germanowski v. Harris,

854 F.3d 68, 72 (1st Cir. 2017) (quoting 29 U.S.C. § 2615(a)(1)).

> In order to make out a *prima facie* case for FMLA interference, [Staples] must show
> that (1) []he was eligible for the FMLA's protections; (2) h[is] employer was
> covered by the FMLA; (3) []he was entitled to leave under the FMLA; (4) []he gave
> h[is] employer notice of h[is] intention to take leave; and (5) h[is] employer denied
> h[is] FMLA benefits to which []he was entitled.

Chacon v. Brigham and Women's Hosp., 99 F. Supp. 3d 207, 213 (D. Mass. 2015) (citing

Carrero-Ojeda v. Autoridad de Energía Eléctrica, 755 F.3d 711, 722 n.8 (1st Cir. 2014)).

Staples appears to premise his FMLA interference claim on both (1) VDS's conduct leading up to his termination and (2) his termination itself.  See [Compl. ¶ 77 ("As more particularly described above, [VDS] interfered with [Staples'] exercise of his rights under FMLA by, *inter alia*, complaining about his use of leave, interrupting his leave with work requests, discouraging him from taking leave, and, ultimately, dismissing him from [VDS]'s employ for having exercised his rights under the statute.")].  Because the claim concerning his dismissal must be evaluated as a retaliation claim, see Chacon, 99 F. Supp. 3d at 214 (noting that "an employer who terminates an employee for exercising or attempting to exercise her FMLA rights has committed a retaliatory act of interference that must be evaluated under the retaliation framework"), and the Court addresses Staples' FMLA retaliation claim separately, see infra Section III.B.2, the Court construes Count I as limited to alleging that VDS prevented Staples from exercising his FMLA rights (or otherwise interfered with the exercise of those rights).

It is undisputed that VDS approved Staples' request for FMLA leave.  [ECF No. 45 ¶¶ 13, 23].  That undisputed fact is not fatal to Staples' claim, however, because an employee can make out an FMLA interference claim if the employer grants leave but still requires the employee to be "on call" or to "work while on leave."  Persson v. Bos. Univ., No. 15-cv-14037, 2019 WL 917205, at *18 (D. Mass. Feb. 25, 2019).  At summary judgment,

> courts have drawn the line along a distinction between, on the one hand, receiving nondisruptive communications such as short phone calls requesting the employee to pass on institutional knowledge or property as a professional courtesy, and, on the other, requiring the employee to complete work-related tasks or produce work product.

Massey-Diez v. Univ. of Iowa Cmty. Med. Servs., Inc., 826 F.3d 1149, 1158–59 (8th Cir. 2016); see Persson, 2019 WL 917205, at *18 (granting summary judgment in employer's favor where

employee alleged only that she received a handful of work-related phone calls during her FMLA leave).

Defendants argue that the evidence in the record does not support Staples' contention that VDS interfered with his FMLA leave.  [ECF No. 39 at 7–8].  Specifically, they point to Staples' deposition testimony that his colleagues occasionally called, or otherwise contacted, him approximately five times during his leave with work-related questions, but that he could not recall specifics.  See [ECF No. 40-2 at 9–10, 21–25, 46].  Staples does not directly respond to Defendants' argument.  See [ECF No. 47].

Based on the evidence in the record, the Court finds that Staples will be unable to carry his burden of showing that VDS interfered with his rights under the FMLA.  See Ocasio-Hernández, 777 F.3d at 5.  Because of Staples' admission that his colleagues were "pretty good about [not contacting him] during" his leave, [ECF No. 40-2 at 21], and the fact that he cannot recall how often he was contacted and what work, if any, he was required to do (aside from answering his co-workers' questions about "lab configuration"), [id. at 9–10, 46], Staples' FMLA interference claim falls on the "nondisruptive communications" side of the line that courts typically draw, see Massey-Diez, 826 F.3d at 1158–59, and therefore fails as a matter of law.  Put slightly differently, based on the undisputed facts, no reasonable factfinder could conclude that VDS unlawfully interfered with Staples' FMLA leave.  Accordingly, Defendants' motion for summary judgment as to Count I, [ECF No. 38], is GRANTED.

2.    FMLA Retaliation (Count II)

In Count II, Staples alleges that VDS terminated him for exercising his FMLA rights. [Compl. ¶¶ 81–87].  "Under the FMLA, employers are 'prohibited from discriminating against employees . . . who have used FMLA leave.'  Nor may an employer 'use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary

actions.'"  Ameen v. Amphenol Printed Circuits, Inc., 777 F.3d 63, 69 (1st Cir. 2015) (citations

omitted) (quoting Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 160 (1st Cir. 1998)).

Because an employer's motives are seldom readily ascertainable, courts apply the McDonnell

Douglas burden-shifting framework to FMLA retaliation claims.  See Ameen, 777 F.3d at 69.

Under that framework,

> the employee bears the burden of making out a prima facie case of discrimination.
> If the employee clears this low hurdle, a rebuttable presumption of discrimination
> arises, and the burden shifts to the employer to advance a legitimate,
> nondiscriminatory reason for its actions. . . . So long as the employer satisfies its
> second-stage burden by proffering a non-discriminatory reason for the adverse
> employment action, the employee — at the third stage of the analysis — must show
> that the employer acted not for the stated reason but, rather, because [] the plaintiff[]
> [exercised his FMLA rights].

Trahan v. Wayfair Me., LLC, 957 F.3d 54, 60–61 (1st Cir. 2020).  "To make out a prima facie

case of FMLA retaliation, [Staples] must show [that]: (1) []he availed h[im]self of a protected

FMLA right; (2) []he was 'adversely affected by an employment decision;' and (3) 'there was a

causal connection between [his] protected conduct and the adverse employment action.'"

Carrero-Ojeda, 755 F.3d at 719 (quoting Orta-Castro v. Merck, Sharp & Dohme Química P.R.,

Inc., 447 F.3d 105, 107 (1st Cir. 2006)).

The first two prima facie elements are uncontested.  See [ECF No. 45 ¶ 23

(demonstrating that Staples requested and was granted FMLA leave); id. at 32 (showing that

Staples was terminated)].  Defendants argue that Staples has failed to introduce any evidence of a

causal relationship between his FMLA leave and his termination, and further, that even if Staples

has made out a prima facie claim, it must be dismissed because Defendants have advanced a

nondiscriminatory reason for their actions and Staples has not adduced evidence that it was

pretextual.  [ECF No. 39 at 4–7].

As an initial matter, Staples has made out a *prima facie* case of FMLA retaliation.  To support an inference of causation, he seems to rely exclusively on the temporal proximity between his FMLA leave—June 21, 2017 through August 28, 2017, in connection with his thumb, and again in late September 2017, in connection with his back—and the decision to terminate him (late October or early November 2017).  Because "[v]ery close temporal proximity between protected activity and an adverse employment action can satisfy a plaintiff's burden of showing causal connection," Sánchez-Rodríguez v. AT&T Mobility P.R., Inc., 673 F.3d 1, 15 (1st Cir. 2012) (quoting Calero-Cerezo v. United States Dep't of Justice, 355 F.3d 6, 25 (1st Cir. 2004)), and Staples' burden is minimal at step one of the McDonnell Douglas framework, see Trahan, 957 F.3d at 60 ("low hurdle"), the Court finds that Staples has made out a *prima facie* case.

With respect to step two, it is undisputed that VDS has advanced a "legitimate, nondiscriminatory reasons for its actions."  Trahan, 957 F.3d at 60.  Namely, that VDS was conducting a RIF and Staples, who was not then working on any client-facing projects, was selected because his departure would have the least impact on the business.  Accordingly, to prevail, Staples will have to show that VDS's asserted justification is pretextual and that he was actually selected because he had taken FMLA leave.  The question before the Court now, however, is merely whether there is sufficient evidence in the record to allow a reasonable jury to make that finding.  See Thompson v. Gold Medal Bakery, Inc., 989 F.3d 135, 144 (1st Cir. 2021) ("[A]t this third and final step, to defeat the motion for summary judgment the FMLA plaintiff must show that there is sufficient evidence in the record to permit a reasonable juror to make that finding.").  The Court finds that there is.

"'Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'" Gómez-González v. Rural Opportunities, Inc., 626 F.3d 654, 662–63 (1st Cir. 2010) (quoting Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997)).  Staples has adduced enough evidence regarding pretext to proceed to trial.

First, throughout his tenure at VDS, Staples was well-liked, well-reviewed, and received multiple employee awards.  See [ECF No. 45 at 19–20].  Even Gopal, who selected Staples for the RIF, had no negative opinion about Staples and had not heard anything negative about Staples as an employee.  See [ECF No. 46-3 at 13].

Second, there is evidence in the record suggesting that the RIF at issue here was conducted in an atypical manner.  For instance, Javanbakht, Staples' direct supervisor, was not involved.  See [ECF No. 46-1 at 28–29 (Javanbakht's deposition testimony that he was concerned that he had not been involved in RIF process); id. at 15 (Javanbakht's deposition testimony that he had been involved in previous RIFs)].[11]  Further, Javanbakht testified at his deposition that, if it were his decision, he would not have selected Staples.  See [id. at 77].  Additionally, Gopal's deposition testimony about whether newly hired employees were to be considered for the RIF was inconsistent.  Compare [ECF No. 46-3 at 4 ("I was asked not to consider them.")], with [id. at 21 ("I was *kind of* told not to consider folks that we have not hired

---

[11] The Court acknowledges Defendants' position that Javanbakht was not involved because he himself was a candidate for termination.  Even if this is true, Gopal could have consulted Javanbakht once it was determined that Javanbakht was not going to be the one terminated.

as part of the reduction" (emphasis added)].[12]  Finally, although VDS's position seems to be that Staples' departure would impact the business the least because he was not working on any client-facing projects at the time of the RIF, Gopal seemingly did not consider whether firing another employee and replacing that employee with Staples would have impacted the business less.  [Id. at 16].

Third, there is evidence in the record indicating that the R&R was flawed, including that: (1) Gopal, who provided most of the employee-specific input, was far less familiar with his team-members' skillsets than Javanbakht was, see [ECF No. 46-4 at 4]; (2) according to his peers and Javanbakht, Staples' rankings were likely lower than they should have been, see, e.g., [ECF No. 46-1 at 32–33]; (3) the R&R was completed only after Gopal had already selected Staples for termination, [ECF No. 46-3 at 5]; (4) VDS's HR representative, not Gopal or Javanbakht, selected the two employees Staples was compared against, [id. at 5–6]; and (5) VDS's HR representative, not Gopal, scored the R&R, see [id. at 10].

Fourth, the timing and circumstances of the QN were questionable.  Specifically, QNs, which appear to have been rarely used at VDS, see [ECF No. 46-5 at 7], become part of an employee's personnel file (and would therefore be an effective way of creating a paper trail regarding Staples' purported shortcomings), see [ECF No. 46-1 at 49–50], and Gopal had difficulty explaining why he sent a QN to Staples after he had already decided to fire him, see [ECF No. 46-3 at 14].

"On summary judgment, [the Court] . . . focus[es] . . . on whether the evidence as a whole is sufficient to make out a jury question as to pretext and discriminatory animus."  Fennell v.

---

[12] Although Gopal has submitted a declaration seemingly clearing up this confusion, see [ECF No. 40-3 ¶ 4], a jury could still reasonably conclude, based on Gopal's deposition testimony, that he was not being completely candid.

First Step Designs, Ltd., 83 F.3d 526, 535 (1st Cir. 1996).  The Court finds that it is.  Here, although a reasonable jury could infer from this evidence that VDS properly selected Staples for the RIF (or that VDS conducted the RIF incompetently and made a bad, but lawful, business decision by firing Staples), a reasonable jury could also infer that Staples was selected for termination because of his recent FMLA leave and that the R&R and QN were used as subterfuge.  Therefore, Defendants' motion for summary judgment as to Count II, [ECF No. 38], must be DENIED.

3.      Failure to Reasonably Accommodate (Count III)

"Failing to reasonably accommodate a disabled person is a form of disability discrimination . . . ."  Lang v. Wal-Mart Stores E., L.P., 813 F.3d 447, 454 (1st Cir. 2016).

> [T]o survive an adverse summary judgment on a failure-to-accommodate claim, [Staples] must point to sufficient evidence showing that (a) []he is disabled within the ADA's definition; that (b) []he could perform the job's essential functions either with or without a reasonable accommodation; and that (c) the employer knew of h[is] disability, yet failed to reasonably accommodate it.

Id.

Defendants argue that Staples has identified no evidence indicating that VDS failed to accommodate any of his alleged disabilities, [ECF No. 39 at 8], and has in fact conceded that "VDS approved all of [his] requests for accommodation . . . related to his thumb and back injuries," [ECF No. 45 ¶ 23].  In his opposition brief, Staples does not engage with Defendants' arguments.  See [ECF No. 47].  Further, based on the complaint, the theory underlying his reasonable accommodation claim is unclear.  See [Compl. ¶ 94 ("On multiple occasion, [Staples] made requests for reasonable accommodation, including leave.  By contacting [Staples] regarding approved leave, [VDS] effectively failed to provide [] Staples with his reasonable accommodation.")].  Accordingly, because Defendants have identified affirmative evidence— here, Staples' admission that VDS provided each reasonable accommodation that he requested—

negating an essential element of his reasonable accommodation claim, see Ocasio-Hernández, 777 F.3d at 4–5, they are entitled to summary judgment, and their motion as to Count III, [ECF No. 38], is therefore GRANTED.

### 4. ADA Discrimination/Retaliation (Count IV)

In Count IV, Staples alleges that VDS violated the ADA.  [Compl. ¶¶ 99–106].  The complaint, however, does not clearly articulate the basis for this claim or whether he is alleging discrimination or retaliation.  [Id. ¶ 100 ("[VDS] discriminated against [Staples] on account of his disability by, *inter alia*, by [sic] interrupting his approved leave with work requests, issuing a bogus [QN], engaging in a sham [R&R], selecting [Staples] for 'layoff,' and dismissing [Staples] from its employ . . . .")].  Based on his opposition brief, it appears as though Staples is arguing that VDS fired him because he was disabled and/or because he had requested reasonable accommodations for his alleged disabilities.  See [ECF No. 47 at 15 ("Defendants violated [] Staples['] rights under the disability laws by discriminating against him due to his disability/handicap, retaliating against him for asserting his rights, and unlawfully laying him off."); id. at 18 ("Staples asserts that his requests for time off and work from home because of the job-related injury as reasonable accommodations constitute protected activities.  The close proximity in time between [] Staples repeatedly asking for accommodation in and his selection for layoff permits an inference of causation for a finding of retaliation.")].

Either way, given the lack of direct evidence of discrimination, the Court once again applies the McDonnell Douglas burden-shifting framework.  See Trahan, 957 F.3d at 60–61 (applying framework to ADA claim).

> To withstand summary judgment on an ADA disability-discrimination claim, [Staples] needs to show the existence of a genuine dispute of material fact as to all three elements of h[is] prima facie case: (1) that []he is disabled under the ADA; (2) that []he "is qualified to perform the essential functions of [his] job with or

without reasonable accommodation"; and (3) that []he "was discharged or otherwise adversely affected in whole or in part because of [his] disability."

Echevarría v. AstraZeneca Pharm. LP, 856 F.3d 119, 126 (1st Cir. 2017) (quoting Jones v. Nationwide Life Ins. Co., 696 F.3d 78, 87 (1st Cir. 2012)).  "To make out a prima facie [ADA] retaliation claim, [Staples] must show that: '(1) []he engaged in protected conduct; (2) []he experienced an adverse employment action; and (3) there was a causal connection between the protected conduct and the adverse employment action.'"  Kelley v. Corr. Med. Servs., Inc., 707 F.3d 108, 115 (1st Cir. 2013) (quoting Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 25 (1st Cir. 2004)).

As to ADA discrimination, Defendants do not seem to contest, at least at this stage, that Staples qualified as disabled under the ADA, see [ECF No. 39 at 4 ("Even assuming, solely for the purposes of this motion, that [Staples] had a covered disability . . . .")], or argue that Staples was unqualified for his position at VDS, see [id.].  Rather, Defendants argue that Staples has failed to adduce evidence of a causal relationship between his termination and his alleged disability.  [Id. at 4.]  For the reasons noted in connection with Staples' FMLA claim, however, see supra Section III.B.2, the Court finds that Staples has adduced enough evidence to create a triable factual question regarding whether Staples' alleged disability factored into VDS's decision to terminate him.  In short, the peculiar manner in which Staples was evaluated, compared to his peers, and selected for termination could reasonably lead to the inference that there was an ulterior motive behind his termination.  Further, because of the temporal proximity between his becoming disabled and his selection for termination, it could be reasonably be inferred that disability-related discriminatory animus was a motivating factor in his termination.

With respect to ADA retaliation, it is undisputed that Staples requested a reasonable accommodation (and was granted one), see [ECF No. 45 ¶¶ 21, 23], and that he experienced an

adverse employment action (i.e., termination).  Again, Defendants focus their efforts on the causation component.  See [ECF No. 39 at 4].  For the reasons stated above, the Court finds that there is evidence in the record from which a reasonable jury could conclude that Defendants' asserted justification is a pretext and that Staples' reasonable accommodation requests precipitated his termination.

Accordingly, Defendants' motion for summary judgment as to Count IV, [ECF No. 38], is DENIED.  Prior to trial, Staples will need to advise the Court and Defendants whether he is pursuing an ADA discrimination claim, an ADA retaliation claim, or both and under what legal theory.

### 5.    Chapter 151B, § 4(16) (Count V)

In Count V, Staples alleges that VDS discriminated against him because of his disability in violation of the Massachusetts disability discrimination statute, Massachusetts General Laws Chapter 151B, § 4(16).  [Compl. ¶¶ 107–20].  Under Chapter 151B, § 4(16),

> [i]t shall be an unlawful practice . . . [f]or any employer, personally or through an agent, to dismiss from employment or refuse to hire, rehire or advance in employment or otherwise discriminate against, because of his handicap, any person alleging to be a qualified handicapped person, capable of performing the essential functions of the position involved with reasonable accommodation, unless the employer can demonstrate that the accommodation required to be made to the physical or mental limitations of the person would impose an undue hardship to the employer's business.

Mass. Gen. Laws ch. 151B, § 4(16).  Courts also apply the McDonnell Douglas framework to Chapter 151B claims.  See Wheelock Coll. v. Mass. Comm'n Against Discrimination, 355 N.E.2d 309, 314–15 (Mass. 1976) (applying framework to Chapter 151B claim).

> To establish a prima facie case of employment discrimination on the basis of handicap under G.L. c. 151B, § 4(16), the plaintiff must show that he is "handicapped" within the meaning of the statute; that he is a "qualified handicapped person" capable of performing the essential functions of his job either without accommodation or with a reasonable accommodation; and that he was subject to an adverse employment action because of his handicap.

Godfrey v. Globe Newspaper Co., 928 N.E.2d 327, 334 (Mass. 2010).

As with the ADA claim, Defendants do not appear to contest, at least at this stage, either that Staples was "handicapped" within the meaning of the statute or that he was qualified for his job, and again focus on causation.  See [ECF No. 39 at 4].  For the reasons stated above, the Court finds that "the evidence as a whole is sufficient to make out a jury question as to pretext and discriminatory animus," Fennell, 83 F.3d at 535, which precludes summary judgment.  Thus, Defendants' motion for summary judgment as to Count V, [ECF No. 38], is DENIED.

6.      Chapter 151B, § 4(4) (Count VI)

In Count VI, Staples alleges that VDS retaliated against him for opposing violations of his rights under the Massachusetts disability discrimination statute.  [Compl. ¶¶ 121–25].  Under Chapter 151B, § 4(4),

> [i]t shall be an unlawful practice . . . [f]or any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden under this chapter or because he has filed a complaint, testified or assisted in any proceeding . . . .

Mass. Gen. Laws ch. 151B, § 4(4).

Defendants argue that because Staples never opposed any discriminatory practices, his § 4(4) claim must be dismissed.  [ECF No. 39 at 4 n.1].  Staples does not squarely address Defendants' contention.  See [ECF No. 47].  Because Staples admits that he did not complain of disability discrimination before being notified of his termination, see [ECF No. 45 ¶ 49], and has pointed to no evidence that he otherwise opposed any allegedly discriminatory employment practices before he was terminated, the Court finds that his § 4(4) claim fails as a matter of law.

Accordingly, Defendants' motion for summary judgment as to Count VI, [ECF No. 38], is

GRANTED.[13]

### 7.   Chapter 152, § 75B(2) (Count IX)

In Count IX, Staples alleges that VDS unlawfully terminated him for making a workers'

compensation claim.  [Compl. ¶¶ 136–40].  Under Chapter 152, § 75B(2),

> [n]o employer or duly authorized agent of an employer shall discharge, refuse to
> hire or in any other manner discriminate against an employee because the employee
> has exercised a right afforded by this chapter, or who has testified or in any manner
> cooperated with an inquiry or proceeding pursuant to this chapter, unless the
> employee knowingly participated in a fraudulent proceeding.

Mass. Gen. Laws ch. 152, § 75B(2).  Courts apply the McDonnell Douglas framework to

workers' compensation retaliation claims.  See Walker v. Mass. Dep't of Corr., No. 05-cv-

01683, 2007 WL 4711398, at *2 (Mass. Super. Ct. Dec. 17, 2007) (applying framework to

Chapter 152 claim).

> To establish a prima facie case under this provision, [Staples] must establish that
> 1) he engaged in an activity protected by the Workers' Compensation Act, 2) the
> defendant was aware of that protected activity, 3) the defendant thereafter took an
> adverse employment action against [Staples] and 4) but for [Staples'] activity the
> defendant would not have taken such an adverse employment action.

Canfield v. Con-Way Freight, Inc., 578 F. Supp. 2d 235, 242 (D. Mass. 2008).

Here, it appears to be undisputed that Staples requested workers' compensation benefits,

that VDS was aware of his request (because it was granted), and that VDS took adverse

employment action against Staples.  See [ECF No. 45 ¶ 23; id. at 32].  Accordingly, the relevant

question is whether there is sufficient evidence in the record to create a jury question concerning

whether VDS terminated Staples because of his workers' compensation claim and not for the

---

[13] Staples also seems to assert this claim against Gopal.  See [Compl. ¶ 121 (listing "All
Defendants")].  For the same reasons that Staples has failed to make out a viable § 4(4) claim
against VDS, he has also failed to do so as against Gopal.

legitimate reason it claims.  Fennell, 83 F.3d at 535.  For the reasons discussed above in connection with Staples' other retaliation claims, the Court finds sufficient evidence to defeat summary judgment.  Defendants' motion for summary judgment as to Count IX, [ECF No. 38], is therefore DENIED.

### C.    Claims Against Gopal

#### 1.    Chapter 151B, § 4(4A) (Count VII)

In Count VII, Staples alleges that Gopal violated Chapter 151B, § 4(4A).  [Compl. ¶¶ 126–30].  Pursuant to Chapter 151B, § 4(4A),

> [i]t shall be an unlawful practice . . . [f]or any person to coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or protected by this chapter, or to coerce, intimidate, threaten or interfere with such other person for having aided or encouraged any other person in the exercise or enjoyment of any such right granted or protected by this chapter.

Mass. Gen. Laws ch. 151B, § 4(4A).

> To establish a claim for interference under Massachusetts General Laws chapter 151B, section 4(4A), [Staples] must show that [Gopal] interfered with his rights under the statute in deliberate disregard of those rights.  In cases based on circumstantial evidence of discrimination, individuals may be held liable if: (1) they had the authority or the duty to act on behalf of the employer; (2) their action or failure to act implicated rights under the statute; and (3) there is evidence articulated by the complainant that the action or failure to act was in deliberate disregard of the complainant's protected rights allowing the inference to be drawn that there was intent to discriminate or interfere with the complainant's exercise of his rights.

Furtado v. Standard Parking Corp., 820 F. Supp. 2d 261, 278 (D. Mass. 2011) (citations omitted).

Defendants focus their argument on the last element, maintaining that there is no record evidence of Gopal's intent to discriminate.[14]  [ECF No. 39 at 9].  Although it is true that Gopal

---

[14] Defendants also argue that Count VII fails because it is derivative of Staples' other Chapter 151B claim, which, in Defendants' view, is not viable.  [ECF No. 39 at 8–9].  Because the Court has already concluded that Staples' Chapter 151B, § 4(16) claim can withstand Defendants' motion for summary judgment, this argument fails.

did not make any derogatory statements about Staples or his alleged disabilities, [ECF No. 45 ¶ 45], there is record evidence—including Gopal's testimony regarding the R&R and QN—that could lead a reasonable jury to conclude that Gopal intentionally discriminated against Staples and then attempted to cover his tracks.  A reasonable jury could also conclude that Gopal did absolutely nothing wrong and selected Staples for the RIF for entirely legitimate reasons. Because the question of which competing reasonable inference to draw from the evidence must be left to the factfinder, Defendants' motion for summary judgment as to Count VII, [ECF No. 38], is DENIED.

          2.    Chapter 151B, § 4(5) (Count VIII)

In Count VIII, Staples alleges that Gopal aided and abetted VDS's discrimination and/or retaliation.  [Compl. ¶¶ 131–35.]  Under Chapter 151B, § 4(5),

> [i]t shall be an unlawful practice . . . [f]or any person whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter or to attempt to do so.

Mass. Gen. Laws ch. 151B, § 4(5).

> [C]laims under Chapter 151B are derivative of underlying discrimination claims, so there can be no liability for aiding and abetting discrimination absent a meritorious underlying claim of discrimination.  [I]n order to prevail on a claim for aiding and abetting under Chapter 151B, a complainant must demonstrate (1) a wholly individual and distinct wrong that was committed by the proposed or named individual respondent(s), which must be separate and distinct from the claim in main, and (2) that the aider or abetter shared an intent to discriminate not unlike that of the alleged principal offender, and that the aider or abetter knew of his or her supporting role in an enterprise designed to deprive an individual of a right guaranteed him or her under G.L. c. 151B.

Sisco v. DLA Piper LLP, 833 F. Supp. 2d 133, 150 (D. Mass. 2011) (citations and internal quotation marks omitted).

Here, Staples cannot sustain his aiding and abetting claim against Gopal because he has not alleged an "individual and distinct wrong."  Sisco, 833 F. Supp. 2d at 150.  To the contrary,

his allegation is that VDS violated Chapter 151B, through its agent Gopal, by discriminating against Staples because of his disability.  Staples does not point to any evidence suggesting that Gopal engaged in any misconduct "separate and distinct" from his primary Chapter 151B discrimination claim.  Id.  Against this backdrop, Defendants' motion for summary judgment as to Count VIII, [ECF No. 38], must be GRANTED.  See Saari v. Allegro Microsys., LLC, 436 F. Supp. 3d 457, 466 (D. Mass. 2020) (dismissing aiding and abetting claim where plaintiff did not allege separate and distinct acts of discrimination and "the discrimination charges against both parties [we]re premised on the same conduct").

## IV.      CONCLUSION

Accordingly, for the reasons stated above, Defendants' motion for summary judgment, [ECF No. 38], is GRANTED in part and DENIED in part.  Counts I, III, VI, and VIII—as well as Counts II, IV, V, and IX as asserted against VNEI and VCI—are dismissed.  Counts II, IV, V, and IX, as asserted against VDS, as well as Count VII, which is asserted against Gopal, remain.

**SO ORDERED.**

May 18, 2021                                              /s/ Allison D. Burroughs
                                                          ALLISON D. BURROUGHS
                                                          U.S. DISTRICT JUDGE